UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA )
)
v. ) No. 2:13-cr-214-GZS
)
DYLAN WOODHOUSE, )
)
    *Defendant* )

## RECOMMENDED DECISION ON MOTION TO SUPPRESS

Dylan Woodhouse, charged in an information with knowing and intentional possession with intent to distribute a mixture or substance containing lysergic acid diethylamide ("LSD") in violation of 21 U.S.C. § 841(a)(1), Information (ECF No. 25), moves to suppress evidence taken from the car he was driving on July 9, 2013, by federal and state law enforcement officers. Motion to Suppress ("Motion") (ECF No. 32) at 1. An evidentiary hearing was held before me on May 12, 2014, at which the defendant appeared with his attorney. The parties submitted an extensive factual stipulation (Government Exhibit 1). The government presented a single witness and no exhibits. The defendant presented no witnesses and no exhibits. After both sides rested, counsel for each argued orally. I recommend that the following findings of fact be adopted and that the motion be denied.

### I. Proposed Findings of Fact

On July 9, 2013, law enforcement authorities were monitoring incoming and outgoing calls to a target telephone number used by Robert Evon, when they intercepted a series of text messages exchanged between the defendant and Evon, who lived on Spring Street in Portland, Maine. The

messages suggested that a drug transaction was scheduled to take place at Evon's residence. Agents also intercepted text messages between Evon and his wife about the pending transaction.

The agents established surveillance of Evon's residence and observed a tan Mercedes with a Maine registration driven by the defendant stopping at the residence. Approximately four minutes after he arrived at the residence, the defendant left in the same car, which he was operating with the permission of the owner. The time was approximately 4:25 p.m.

Agents maintained constant surveillance of the defendant's car as it drove approximately one mile to the Evergreen Garden Center in Portland, where the defendant parked it in the parking lot at 301 Forest Avenue. The parking lot was small and congested. As the defendant got out of the car, he was approached by Agent Paul Buchanan of the United States Drug Enforcement Administration. Buchanan asked the defendant about his recent whereabouts and about an object he observed in the defendant's left pants pocket. The defendant stated that he had done nothing wrong and asked why Buchanan was harassing him.

The defendant produced the object from his pocket for inspection. It was a prescription bottle that contained a small marijuana bud but no pills. The defendant, who is permanently disabled from a spinal cord injury, stated that he was a medical marijuana patient and produced his medical marijuana certificate. Following a discussion about the amount of marijuana inside the vehicle, the defendant was asked for his consent to search the vehicle. He declined to consent, but offered to get the marijuana out of the vehicle to show to the agent. This offer was declined.

Buchanan then stepped away to call Assistant United States Attorney David Joyce to seek advice regarding probable cause to search the vehicle, and whether to seek a search warrant. Someone from the United States Attorney's Office called the office of the Cumberland County District Attorney to ask the same questions. Buchanan was told that both offices advised that,

while obtaining a search warrant was always prudent, there was probable cause to search the car without a warrant in this case. Buchanan preferred not to apply for a search warrant, as that could tip off Evon to the ongoing investigation.

Buchanan then advised the defendant that he was not under arrest and was free to go but could not take the vehicle. He asked the defendant for the keys to the vehicle, but the defendant refused, saying that he would not consent to a search of the vehicle. At this point, a group of onlookers had gathered, the defendant and an employee of the store began using their cell phones to record video of any search, and the store owner expressed frustration that the Mercedes and the agents' vehicle were blocking access to his store. Buchanan decided to have the vehicle towed to a nearby location away from the business and the onlookers, where the agents could search it.

A tow truck was called at a time between 5:15 p.m. and 5:30 p.m., and while they waited for the truck, Buchanan again asked for the keys to the car, and the defendant again refused. A flatbed trailer arrived at approximately 6:30 p.m., and the defendant again refused a request for the keys to the car so that it could be driven onto the flatbed. The car was secured on the flatbed, which drove to the parking lot of AAA in Portland. Buchanan chose this site because it was fairly close, there was plenty of room in the parking lot, the federal ATF had an office there, and a crowd of onlookers was not likely to gather.

The car was searched while it sat on the flatbed in the AAA parking lot. The defendant was present during the search. From the car, the agents seized a plastic container containing approximately two ounces of marijuana, a digital scale, several pieces of "chocolate"" in a plastic bag, and a small blue eye dropper bottle that contained a clear liquid. When asked, the defendant said that the liquid was a marijuana-based tincture. Subsequent analysis determined that it was LSD.

3

At approximately 7:10 p.m., the vehicle was released to the defendant, who acknowledged that it had not been damaged. The medicinal marijuana and the digital scale were returned to the defendant following the search. The car was driven away from the AAA parking lot.

The defendant agrees that, based on wire interceptions and surveillance, probable cause to stop and search the vehicle existed at the time that Buchanan first made contact with the defendant in the parking lot of the Evergreen Garden Center.

## II.     Discussion

The defendant states that he agrees that the agents had probable cause to search his vehicle and challenges only "the manner of the search." Motion at 4. Specifically, he contends that the automobile exception to the search warrant requirement expired when his car was immobilized and moved. He cites no authority on point, but rather asserts that the rationale behind the automobile exception does not extend to the circumstances of this case.

In his oral argument, the defendant's attorney focused on the fact that the car had been immobilized by the agents as the factor requiring suppression. He contended that the automobile exception to the search warrant requirement is irrelevant when there is time to get a search warrant, citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). He went on to argue that the fact that the car was immobilized on the flat bed also takes this case out of the automobile exception to the warrant requirement, citing *California v. Carney,* 471 U.S. 386 (1985).

In *Coolidge,* the Supreme Court held that the police "could not legally seize the [defendant's] car, remove it [from his driveway}, and search it at their leisure without a warrant." 403 U.S. at 457. It rejected the argument that, when the defendant was arrested inside his house, removing the car from the driveway and searching it later was a search incident to arrest. *Id*. In the case at hand, the car clearly was not searched incident to arrest; no arrest was made. Nor was

4

the car on the defendant's private property; it was in a public parking lot. In addition, the defendant in *Coolidge*

> had already had ample opportunity to destroy any evidence he thought incriminating. There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of his house. The opportunity for search was thus hardly "fleeting."

*Id*. at 460. Each of these facts is the opposite of the conditions that existed at the relevant time in the instant case.

Furthermore, the legal landscape has not remained static in the almost 43 years since the Supreme Court decided *Coolidge*. *California v. Carney*, 471 U.S. 386 (1985), actually supports the government's position in this case. In *Carney*, DEA agents believed that a drug transaction had taken place in a motor home parked in a lot in downtown San Diego. *Id*. at 388. They entered the motor home after identifying themselves as law enforcement officers, without a warrant or consent. *Id*. They moved the motor home to the police station and searched it again there. *Id*. The Supreme Court noted that "although ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. . . . [L]ess rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Id*. at 391 (citation and internal quotation marks omitted).

"Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id*. That is the case here, where the vehicle involved, a car, was less like a home than the motor home which the Supreme Court held to be within the vehicular exception, and the "immobility" of the car lasted about three hours. To make the fact that the agents did not take the

5

car off the flat bed before searching it the basis for suppressing the evidence seized from it would be to put far too fine a point on the Supreme Court's discussion of the scope of the exception,[1] and on the case law from other federal courts that has followed *Carney*.

More recent case law from the First Circuit settles the matter. In *United States v. Lopez*, 380 F.3d 538 (1st Cir. 2004), agents conducting surveillance on a minivan parked in the lot of a condominium complex arrested the defendant while a suspected drug sale was taking place in the van, and then transported the van to the police station "[d]ue to poor lighting and the presence of a crowd of onlookers." *Id*. at 542. After some questioning of the defendant, the agents searched the van. The defendant moved to suppress guns and drugs found during the search. *Id*. at 543. The First Circuit held that "[t]he relocation of the vehicle from the parking lot to the police station did not deprive the officers of probable cause to search." *Id*. at 545.

In *United States v. Polanco*, 634 F.3d 39 (1st Cir. 2011), agents observed a drug transaction in a vehicle in a parking lot and arrested the participants. *Id*. at 40. Because it was raining heavily, they moved the car to a DEA office. *Id*. at 41. Polanco filed a motion to suppress the evidence seized from the car. *Id*. The First Circuit agreed with the trial court that the agents had probable cause to search the car. *Id*. at 43.

> As a fallback defense, Polanco contends that the search flunked the auto-exception test, for three reasons: agents did not actually stop his car, they gave it a thorough going over at another locale, and they had time to get a warrant. But each argument is a retread that has no traction: an impressive convoy of auto-exception cases holds that if the requisite probable cause exists it matters not whether the vehicle was already parked, whether it was search at another local, or even whether agents had time to obtain a warrant first[.]

---

[1] The Supreme Court's reference, in *dictum*, to a vehicle elevated on blocks, 471 U.S. at 394 n.3, cited by the defendant's attorney at oral argument, is to illustrate the concept that such a vehicle would not be readily mobile, while a vehicle that was on the road no more than three hours before the search and again immediately after the search is readily mobile, requiring nothing more than the unfastening of some anchors to allow it to be removed from the restraint of the flatbed truck, use of which was necessitated by the defendant's refusal to provide the agents with the keys to the car.

*Id.* (citations and internal quotation marks omitted).

The only one of the defendant's arguments that is not directly addressed by this case law is the temporary immobility of the car on the flatbed truck in this case. For the reasons already discussed, that is a distinction without a difference. The constitutionality of a vehicle search does not turn on the means by which law enforcement agents move the vehicle before searching it.

### III. Conclusion

For the foregoing reasons, I recommend that the proposed findings of fact be adopted and the motion to suppress be **DENIED**.

#### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of May, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge